**Eastern District of Pennsylvania**

Notice of Electronic Claims Filing

The following transaction was received from CARLON, DENISE on 3/5/2025 at 2:37 PM EST

File another claim

| | |
|---|---|
| **Case Name:** | Amy Beth Holdsworth |
| **Case Number:** | 25-10048-djb |
| **Creditor Name:** | Lakeview Loan Servicing, LLC<br>c/o M&T Bank<br>P.O. Box 840<br>Buffalo, NY 14240-0840 |
| **Claim Number:** | 6   Claims Register |

**Amount Claimed:** $140,345.53
**Amount Secured:** $140345.53
**Amount Priority:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**POC- Holdsworth.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=3/5/2025] [FileNumber=32569325-0
] [6f999f5e1a791155c39c4728d773fa4fc81be0666b51889299020601 6f8482c5c88
8eb5f093fb0aff4d3936a59534f72f00653a15442fceaf9413e488a52e515]]
**Document description:**Exhibit 410a Payment History
**Original filename:**C:\fakepath\410a- Holdsworth.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=3/5/2025] [FileNumber=32569325-1
] [16a6868a6b501fa0d519b1ae025ef3e9b283ca59aae55062c8c86d41002297d1e03
2d0f7bed31ffd84daddf913386c798efb1cd009c2266108e97fd65fcb6571]]
**Document description:**Exhibit Escrow Analysis
**Original filename:**C:\fakepath\Escrow Analysis- Holdworth- Redacted.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=3/5/2025] [FileNumber=32569325-2
] [8c11340599e60e2df3cbb60bbed520e5c6ca10d1f084d53fdd71028f855c77d5113
63858c3b71d415f44e35ebb7f990f2e924d9f4654b0639164b6aee14d490c]]
**Document description:**Exhibit Loan Documents
**Original filename:**C:\fakepath\Loan Documents- Holdworth- Redacted.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=3/5/2025] [FileNumber=32569325-3
] [63b82dcb14c8d3c26b2b2301c252be268c2e515ab6ae1be3c18b2fabfbaa5457daa
7838cf36bf4132868bf50bafe90e2717def4f48f6de4e8e50667984dbbd20]]

**25-10048-djb Notice will be electronically mailed to:**

DENISE ELIZABETH CARLON on behalf of Creditor LAKEVIEW LOAN SERVICING, LLC
bkgroup@kmllawgroup.com

MICHAEL A. CIBIK on behalf of Debtor Amy Beth Holdsworth
help@cibiklaw.com,
noreply01@cibiklaw.com;noreply02@cibiklaw.com;noreply03@cibiklaw.com;noreply04@cibiklaw.com;noreply05@cibiklaw.com;cibiklawpc@jubileebk.net;cibiklaw@rec

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

KENNETH E. WEST
ecfemails@ph13trustee.com, philaecf@gmail.com

**25-10048-djb Notice will not be electronically mailed to:**

**Fill in this information to identify the case:**

Debtor 1    Amy Beth Holdsworth f/k/a Amy Beth Gormley

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the EASTERN District of Pennsylvania

Case number   25-10048-DJB

Official Form 410

# Proof of Claim

12/24

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. **Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| **Part 1:** | **Identify the Claim** |
| --- | --- |

| 1. Who is the current creditor? | **Lakeview Loan Servicing, LLC** |
| --- | --- |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor _____ |

| 2. Has this claim been acquired from someone else? | ☒ No |
| --- | --- |
| | ☐ Yes.  From whom? _____ |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| **M&T Bank** | **M&T Bank** |
| Name | Name |
| **P.O. Box 840** | **ATTN: Payment Processing, P.O. Box 1288** |
| Number        Street | Number        Street |
| **Buffalo, NY 14240-0840** | **Buffalo, NY 14240-1288** |
| City        State        Zip Code | City        State        Zip Code |
| Contact phone | Contact phone |
| Contact Email | Contact Email |
| Uniform claim identifier (if you use one): | |
| _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| 4. Does this claim amend one already filed? | ☒ No |
| --- | --- |
| | ☐ Yes.  Claim number on court claims registry (if known) _____   Filed on _____ |
| | MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No |
| --- | --- |
| | ☐ Yes.  Who made the earlier filing? _____ |

Official Form 410                                      **Proof of Claim**

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No <br> ☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor    **3090** |

7. **How much is this claim?** $ <u>140,345.53</u>

**Does this amount include interest or other charges?**

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

9. **Is all or part of the claim secured?**

☐ No
☒ Yes.    The claim is secured by a lien on property.
**Nature of property: <u>3553 Byrne Road Philadelphia, PA 19154</u>**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:    <u>Deed of Trust, Mortgage, Note</u>**
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____

**Amount of the claim that is secured:**    <u>$140,345.53</u>

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition: <u>$36,415.79</u>**

**Annual Interest Rate** (when case was filed) <u>5.00000%</u>

☒ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

242

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(  ) that applies. | $_____ |

\*  Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  __03/05/2025__
                          MM / DD / YYYY

**/s/ Denise Carlon, Attorney ID# 317226**

                 Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | **Denise Carlon** | | |
| | First name | Middle name | Last name |
| Title | **Bankruptcy Attorney** | | |
| Company | **KML Law Group, P.C.** | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | **701 Market Street, Suite 5000** | | |
| | Number        Street | | |
| | **Philadelphia** | **PA** | **19106** |
| | City | State | ZIP Code |
| Contact phone | **(215) 627-1322** | Email | **bkgroup@kmllawgroup.com** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: Amy Beth Holdsworth f/k/a Amy Beth Gormley | **BK NO. 25-10048-DJB** |
| **Debtor(s)** | **Chapter 13** |
| Lakeview Loan Servicing, LLC | |
| **Movant** | |
| **vs.** | |
| Amy Beth Holdsworth f/k/a Amy Beth Gormley | |
| **Debtor(s)** | |
| Kenneth E. West | |
| **Trustee** | |

### CERTIFICATE OF SERVICE

I, Denise Carlon, certify that on 3/05/2025, I did cause a true and correct copy of the documents described below to be served on the parties listed on the mailing list exhibit, a copy of which is attached and incorporated as if fully set forth herein, by the means indicated and to all parties registered with the Clerk to receive electronic notice via the CM/ECF system:

- Proof of Claim
- 410a Payment History
- Escrow Analysis
- Loan Documents
- Certificate of Service

I certify under penalty of perjury that the above document(s) was sent using the mode of service indicated.

Dated: 3/05/2025

**/s/ Denise Carlon**
**Denise Carlon,** Esquire
Attorney I.D. 317226
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
201-549-2363
bkgroup@kmllawgroup.com

Mailing List Exhibit: (Check all that apply.  If via e-mail, include e-mail address.  Continue to the next page if necessary.)

| Name and Address of Party Served | Relationship of Party | Via |
|---|---|---|
| Amy Beth Holdsworth f/k/a Amy Beth Gormley<br>3553 Byrne Rd<br>Philadelphia, PA 19154 | Debtor | ☐ Hand-delivered<br><br>☒ First Class Mail<br><br>☐ Certified mail<br><br>☐ E-mail<br><br>☐ CM/ECF<br><br>☐ Other<br>_____<br>(as authorized by the court *) |
| Michael A. Cibik2 Esq.<br>1500 Walnut Street, Suite 900<br>Philadelphia, PA 19102 | Attorney for Debtor | ☐ Hand-delivered<br><br>☐ First Class Mail<br><br>☐ Certified mail<br><br>☐ E-mail<br><br>☒ CM/ECF<br><br>☐ Other<br>_____<br>(as authorized by the court *) |
| Kenneth E. West<br>1901 N. Independence Mall West<br>Suite 701<br>Philadelphia, PA 19106 | Trustee | ☐ Hand-delivered<br><br>☐ First Class Mail<br><br>☐ Certified mail<br><br>☐ E-mail<br><br>☒ CM/ECF<br><br>☐ Other<br>_____<br>(as authorized by the court *) |

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case Number: | 25-10048-djb |
| Debtor 1: | Amy Beth Holdsworth f/k/a Amy Beth Gormley |
| Debtor 2: | NA |
| Last 4 digits used to Identify | 3090 |
| Creditor: | Lakeview Loan Servicing LLC |
| Servicer: | M&T Bank |
| Fixed accrual, Daily simple interest or other: | Fixed Accrual |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal Balance: | 115854.31 |
| Interest Due: | 11585.52 |
| MIP Amount: | 0.00 |
| Fees, Costs Due: | 8229.41 |
| Escrow deficiency for funds advanced: | 4676.29 |
| Total Debt: | 140345.53 |

## Part 3: Arrearage as of Date of Petition

| | |
|---|---|
| Principal due: | 9955.39 |
| Interest due: | 10653.99 |
| Prepetition fees due: | 8229.41 |
| Escrow deficiency for funds advanced: | 4676.29 |
| Projected escrow shortage: | 2900.71 |
| Less funds on hand: | 0.00 |
| Total prepetition arrearage | 36415.79 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & Interest | 896.06 |
| Monthly Escrow | 322.29 |
| Private Mortgage Insurance | 0.00 |
| Total Monthly Payment | 1218.35 |
| 1st Post Petition Payment Due | 2/1/2025 |

## Part 5:  Loan Payment History from First Date of Default

| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal Balance | N. Accrued interest balance | O. Escrow Balance | P. Fees / Charges Balance | Q. Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Beginning Balance | | 0.00 | | | | | | 117,084.05 | 2,012.16 | 0.00 | 0.00 | |
| 12/1/22 | 1,176.53 | | | Contractual Payment Due | 12/1/2022 | 1,176.53 | | | | | | 117,084.05 | 2,012.16 | 0.00 | 0.00 | |
| 12/16/22 | | | 47.06 | Late Charge | 12/1/2022 | 1,176.53 | | | | 47.06 | | 117,084.05 | 2,012.16 | 0.00 | 47.06 | 0.00 |
| 1/1/23 | 1,176.53 | | | Contractual Payment Due | 12/1/2022 | 2,353.06 | | | | | | 117,084.05 | 2,012.16 | 0.00 | 47.06 | 0.00 |
| 1/9/23 | | 1,500.00 | | Payment Applied | 12/1/2022 | 1,176.53 | 408.21 | 487.85 | 280.47 | | 323.47 | 116,675.84 | 2,292.63 | 47.06 | 323.47 | |
| 1/17/23 | | | 47.06 | Late Charge | 1/1/2023 | 1,176.53 | | | | 47.06 | | 116,675.84 | 2,292.63 | 94.12 | 323.47 | |
| 2/1/23 | 1,176.53 | | | Contractual Payment Due | 1/1/2023 | 2,353.06 | | | | | | 116,675.84 | 2,292.63 | 94.12 | 323.47 | |
| 2/16/23 | | | 47.06 | Late Charge | 1/1/2023 | 2,353.06 | | | | 47.06 | | 116,675.84 | 2,292.63 | 141.18 | 323.47 | |
| 2/24/23 | | | 20.00 | Property Inspection | 1/1/2023 | 2,353.06 | | | | 20.00 | | 116,675.84 | 2,292.63 | 161.18 | 323.47 | |
| 2/27/23 | | | | City/Village Tax | 1/1/2023 | 2,353.06 | | | -2,578.43 | | | 116,675.84 | -285.80 | 161.18 | 323.47 | |
| 3/1/23 | 1,176.53 | | | Contractual Payment Due | 1/1/2023 | 3,529.59 | | | | | | 116,675.84 | -285.80 | 161.18 | 323.47 | |
| 3/16/23 | | | 47.06 | Late Charge | 1/1/2023 | 3,529.59 | | | | 47.06 | | 116,675.84 | -285.80 | 208.24 | 323.47 | |
| 3/27/23 | | | 20.00 | Property Inspection | 1/1/2023 | 3,529.59 | | | | 20.00 | | 116,675.84 | -285.80 | 228.24 | 323.47 | |
| 4/1/23 | 1,176.53 | | | Contractual Payment Due | 1/1/2023 | 4,706.12 | | | | | | 116,675.84 | -285.80 | 228.24 | 323.47 | |
| 4/17/23 | | | 47.06 | Late Charge | 1/1/2023 | 4,706.12 | | | | 47.06 | | 116,675.84 | -285.80 | 275.30 | 323.47 | |
| 4/26/23 | | | 20.00 | Property Inspection | 1/1/2023 | 4,706.12 | | | | 20.00 | | 116,675.84 | -285.80 | 295.30 | 323.47 | |
| 4/27/23 | | 2,029.59 | | Payment Applied | 1/1/2023 | 3,529.59 | 409.91 | 486.15 | 280.47 | | | 116,265.93 | -5.33 | 295.30 | 323.47 | |
| 4/27/23 | | | | Payment Applied | 2/1/2023 | 2,353.06 | 411.62 | 484.44 | 280.47 | | -323.47 | 115,854.31 | 275.14 | 295.30 | 0.00 | |
| 5/1/23 | 1,176.53 | | | Contractual Payment Due | 3/1/2023 | 3,529.59 | | | | | | 115,854.31 | 275.14 | 295.30 | 0.00 | |
| 5/16/23 | | | 47.06 | Late Charge | 3/1/2023 | 3,529.59 | | | | 47.06 | | 115,854.31 | 275.14 | 342.36 | 0.00 | |
| 6/1/23 | 1,176.53 | | | Contractual Payment Due | 3/1/2023 | 4,706.12 | | | | | | 115,854.31 | 275.14 | 342.36 | 0.00 | |
| 6/5/23 | | | 20.00 | Property Inspection | 3/1/2023 | 4,706.12 | | | | 20.00 | | 115,854.31 | 275.14 | 362.36 | 0.00 | |
| 6/16/23 | | | 47.06 | Late Charge | 3/1/2023 | 4,706.12 | | | | 47.06 | | 115,854.31 | 275.14 | 409.42 | 0.00 | |
| 6/28/23 | | | | Hazard Insurance | 3/1/2023 | 4,706.12 | | | -1,084.00 | | | 115,854.31 | -808.86 | 409.42 | 0.00 | |
| 7/1/23 | 1,176.53 | | | Contractual Payment Due | 3/1/2023 | 5,882.65 | | | | | | 115,854.31 | -808.86 | 409.42 | 0.00 | |
| 7/3/23 | | | 20.00 | Property Inspection | 3/1/2023 | 5,882.65 | | | | 20.00 | | 115,854.31 | -808.86 | 429.42 | 0.00 | |
| 7/26/23 | | | 265.00 | FC Cost Title | 3/1/2023 | 5,882.65 | | | | 265.00 | | 115,854.31 | -808.86 | 694.42 | 0.00 | |
| 8/1/23 | 1,176.53 | | | Contractual Payment Due | 3/1/2023 | 7,059.18 | | | | | | 115,854.31 | -808.86 | 694.42 | 0.00 | |
| 8/2/23 | | | 20.00 | Property Inspection | 3/1/2023 | 7,059.18 | | | | 20.00 | | 115,854.31 | -808.86 | 714.42 | 0.00 | |
| 8/30/23 | | | 20.00 | Property Inspection | 3/1/2023 | 7,059.18 | | | | 20.00 | | 115,854.31 | -808.86 | 734.42 | 0.00 | |
| 9/1/23 | 1,176.53 | | | Contractual Payment Due | 3/1/2023 | 8,235.71 | | | | | | 115,854.31 | -808.86 | 734.42 | 0.00 | |
| 9/7/23 | | | 1,725.00 | FC Atty Fees | 3/1/2023 | 8,235.71 | | | | 1,725.00 | | 115,854.31 | -808.86 | 2,459.42 | 0.00 | |
| 9/7/23 | | | 352.98 | FC Cost Service | 3/1/2023 | 8,235.71 | | | | 352.98 | | 115,854.31 | -808.86 | 2,812.40 | 0.00 | |

| Date | Pmt | Amount | Description | Date | Contractual Due | | Applied | Principal Bal | Escrow Adj | Balance | Unapplied |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/28/23 | | 30.00 | Property Inspection | 3/1/2023 | 8,252.71 | | | 115,854.31 | -808.86 | 2,832.40 | 0.00 |
| 10/1/23 | 1,176.53 | | Contractual Payment Due | 3/1/2023 | | | | 115,854.31 | -808.86 | 2,832.40 | 0.00 |
| 10/11/23 | | 690.00 | FC Atty Fees | 3/1/2023 | 9,412.24 | | 690.00 | 115,854.31 | -808.86 | 3,522.40 | 0.00 |
| 10/11/23 | | 95.00 | FC Cost Service | 3/1/2023 | 9,412.24 | | 95.00 | 115,854.31 | -808.86 | 3,617.40 | 0.00 |
| 10/25/23 | | 20.00 | Property Inspection | 3/1/2023 | 9,412.24 | | 20.00 | 115,854.31 | -808.86 | 3,637.40 | 0.00 |
| 11/1/23 | 1,176.53 | | Contractual Payment Due | 3/1/2023 | 10,588.77 | | | 115,854.31 | -808.86 | 3,637.40 | 0.00 |
| 11/29/23 | | 30.00 | Property Inspection | 3/1/2023 | 10,588.77 | | 30.00 | 115,854.31 | -808.86 | 3,667.40 | 0.00 |
| 12/1/23 | 1,175.62 | | Contractual Payment Due | 3/1/2023 | 11,764.39 | | | 115,854.31 | -808.86 | 3,667.40 | 0.00 |
| 12/26/23 | | 30.00 | Property Inspection | 3/1/2023 | 11,764.39 | | 30.00 | 115,854.31 | -808.86 | 3,697.40 | 0.00 |
| 1/1/24 | 1,175.62 | | Contractual Payment Due | 3/1/2023 | 12,940.01 | | | 115,854.31 | -808.86 | 3,697.40 | 0.00 |
| 1/29/24 | | 30.00 | Property Inspection | 3/1/2023 | 12,940.01 | | 30.00 | 115,854.31 | -808.86 | 3,727.40 | 0.00 |
| 2/1/24 | 1,175.62 | | Contractual Payment Due | 3/1/2023 | 14,115.63 | | | 115,854.31 | -808.86 | 3,727.40 | 0.00 |
| 2/15/24 | | | City/Village Tax | 3/1/2023 | 14,115.63 | -2,578.43 | | 115,854.31 | -3,387.29 | 3,727.40 | 0.00 |
| 2/29/24 | | 30.00 | Property Inspection | 3/1/2023 | 14,115.63 | | 30.00 | 115,854.31 | -3,387.29 | 3,757.40 | 0.00 |
| 3/1/24 | 1,175.62 | | Contractual Payment Due | 3/1/2023 | 15,291.25 | | | 115,854.31 | -3,387.29 | 3,757.40 | 0.00 |
| 4/1/24 | 1,175.62 | | Contractual Payment Due | 3/1/2023 | 16,466.87 | | | 115,854.31 | -3,387.29 | 3,757.40 | 0.00 |
| 4/9/24 | | 30.00 | Property Inspection | 3/1/2023 | 16,466.87 | | 30.00 | 115,854.31 | -3,387.29 | 3,787.40 | 0.00 |
| 4/25/24 | | 30.00 | Property Inspection | 3/1/2023 | 16,466.87 | | 30.00 | 115,854.31 | -3,387.29 | 3,817.40 | 0.00 |
| 4/26/24 | | 350.00 | FC Atty Fees | 3/1/2023 | 16,466.87 | | 350.00 | 115,854.31 | -3,387.29 | 4,167.40 | 0.00 |
| 5/1/24 | 1,175.62 | | Contractual Payment Due | 3/1/2023 | 17,642.49 | | | 115,854.31 | -3,387.29 | 4,167.40 | 0.00 |
| 5/21/24 | | 225.00 | FC Atty Fees | 3/1/2023 | 17,642.49 | | 225.00 | 115,854.31 | -3,387.29 | 4,392.40 | 0.00 |
| 5/24/24 | | 30.00 | Property Inspection | 3/1/2023 | 17,642.49 | | 30.00 | 115,854.31 | -3,387.29 | 4,422.40 | 0.00 |
| 6/1/24 | 1,175.62 | | Contractual Payment Due | 3/1/2023 | 18,818.11 | | | 115,854.31 | -3,387.29 | 4,422.40 | 0.00 |
| 6/24/24 | | 30.00 | Property Inspection | 3/1/2023 | 18,818.11 | | 30.00 | 115,854.31 | -3,387.29 | 4,452.40 | 0.00 |
| 6/28/24 | | | Hazard Insurance | 3/1/2023 | 18,818.11 | -1,289.00 | | 115,854.31 | -4,676.29 | 4,452.40 | 0.00 |
| 7/1/24 | 1,175.62 | | Contractual Payment Due | 3/1/2023 | 19,993.73 | | | 115,854.31 | -4,676.29 | 4,452.40 | 0.00 |
| 7/24/24 | | 2.31 | FC Cost Service | 3/1/2023 | 19,993.73 | | 2.31 | 115,854.31 | -4,676.29 | 4,454.71 | 0.00 |
| 7/30/24 | | 30.00 | Property Inspection | 3/1/2023 | 19,993.73 | | 30.00 | 115,854.31 | -4,676.29 | 4,484.71 | 0.00 |
| 8/1/24 | 1,175.62 | | Contractual Payment Due | 3/1/2023 | 21,169.35 | | | 115,854.31 | -4,676.29 | 4,484.71 | 0.00 |
| 8/2/24 | | 690.00 | FC Atty Fees | 3/1/2023 | 21,169.35 | | 690.00 | 115,854.31 | -4,676.29 | 5,174.71 | 0.00 |
| 8/2/24 | | 0.64 | FC Cost Service | 3/1/2023 | 21,169.35 | | 0.64 | 115,854.31 | -4,676.29 | 5,175.35 | 0.00 |
| 8/2/24 | | 1,500.00 | FC Cost Service | 3/1/2023 | 21,169.35 | | 1,500.00 | 115,854.31 | -4,676.29 | 6,675.35 | 0.00 |
| 8/19/24 | | 1.34 | FC Cost Service | 3/1/2023 | 21,169.35 | | 1.34 | 115,854.31 | -4,676.29 | 6,676.69 | 0.00 |
| 8/19/24 | | 8.16 | FC Cost Service | 3/1/2023 | 21,169.35 | | 8.16 | 115,854.31 | -4,676.29 | 6,684.85 | 0.00 |
| 8/20/24 | | 2.69 | FC Cost Service | 3/1/2023 | 21,169.35 | | 2.69 | 115,854.31 | -4,676.29 | 6,687.54 | 0.00 |
| 8/20/24 | | 2.69 | FC Cost Service | 3/1/2023 | 21,169.35 | | 2.69 | 115,854.31 | -4,676.29 | 6,690.23 | 0.00 |
| 8/20/24 | | 2.69 | FC Cost Service | 3/1/2023 | 21,169.35 | | 2.69 | 115,854.31 | -4,676.29 | 6,692.92 | 0.00 |
| 8/20/24 | | 8.44 | FC Cost Service | 3/1/2023 | 21,169.35 | | 8.44 | 115,854.31 | -4,676.29 | 6,701.36 | 0.00 |
| 8/20/24 | | 8.44 | FC Cost Service | 3/1/2023 | 21,169.35 | | 8.44 | 115,854.31 | -4,676.29 | 6,709.80 | 0.00 |
| 8/20/24 | | 8.44 | FC Cost Service | 3/1/2023 | 21,169.35 | | 8.44 | 115,854.31 | -4,676.29 | 6,718.24 | 0.00 |
| 8/22/24 | | 30.00 | Property Inspection | 3/1/2023 | 21,169.35 | | 30.00 | 115,854.31 | -4,676.29 | 6,748.24 | 0.00 |
| 8/22/24 | | 135.00 | FC Cost Service | 3/1/2023 | 21,169.35 | | 135.00 | 115,854.31 | -4,676.29 | 6,883.24 | 0.00 |
| 8/26/24 | | 75.00 | FC Cost Title | 3/1/2023 | 21,169.35 | | 75.00 | 115,854.31 | -4,676.29 | 6,958.24 | 0.00 |
| 9/1/24 | 1,175.62 | | Contractual Payment Due | 3/1/2023 | 22,344.97 | | | 115,854.31 | -4,676.29 | 6,958.24 | 0.00 |
| 9/19/24 | | 30.00 | Property Inspection | 3/1/2023 | 22,344.97 | | 30.00 | 115,854.31 | -4,676.29 | 6,988.24 | 0.00 |
| 9/25/24 | | 350.00 | Appraisal | 3/1/2023 | 22,344.97 | | 350.00 | 115,854.31 | -4,676.29 | 7,338.24 | 0.00 |
| 10/1/24 | 1,175.62 | | Contractual Payment Due | 3/1/2023 | 23,520.59 | | | 115,854.31 | -4,676.29 | 7,338.24 | 0.00 |
| 10/1/24 | | 1.62 | FC Cost Service | 3/1/2023 | 23,520.59 | | 1.62 | 115,854.31 | -4,676.29 | 7,339.86 | 0.00 |
| 10/1/24 | | 1.62 | FC Cost Service | 3/1/2023 | 23,520.59 | | 1.62 | 115,854.31 | -4,676.29 | 7,341.48 | 0.00 |
| 10/1/24 | | 1.62 | FC Cost Service | 3/1/2023 | 23,520.59 | | 1.62 | 115,854.31 | -4,676.29 | 7,343.10 | 0.00 |
| 10/1/24 | | 1.62 | FC Cost Service | 3/1/2023 | 23,520.59 | | 1.62 | 115,854.31 | -4,676.29 | 7,344.72 | 0.00 |
| 10/1/24 | | 1.62 | FC Cost Service | 3/1/2023 | 23,520.59 | | 1.62 | 115,854.31 | -4,676.29 | 7,346.34 | 0.00 |
| 10/1/24 | | 1.62 | FC Cost Service | 3/1/2023 | 23,520.59 | | 1.62 | 115,854.31 | -4,676.29 | 7,347.96 | 0.00 |
| 10/1/24 | | 1.62 | FC Cost Service | 3/1/2023 | 23,520.59 | | 1.62 | 115,854.31 | -4,676.29 | 7,349.58 | 0.00 |
| 10/1/24 | | 1.62 | FC Cost Service | 3/1/2023 | 23,520.59 | | 1.62 | 115,854.31 | -4,676.29 | 7,351.20 | 0.00 |
| 10/1/24 | | 1.62 | FC Cost Service | 3/1/2023 | 23,520.59 | | 1.62 | 115,854.31 | -4,676.29 | 7,352.82 | 0.00 |
| 10/24/24 | | 30.00 | Property Inspection | 3/1/2023 | 23,520.59 | | 30.00 | 115,854.31 | -4,676.29 | 7,382.82 | 0.00 |
| 10/29/24 | | 0.69 | FC Cost Service | 3/1/2023 | 23,520.59 | | 0.69 | 115,854.31 | -4,676.29 | 7,383.51 | 0.00 |
| 10/29/24 | | 2.69 | FC Cost Service | 3/1/2023 | 23,520.59 | | 2.69 | 115,854.31 | -4,676.29 | 7,386.20 | 0.00 |
| 10/29/24 | | 2.69 | FC Cost Service | 3/1/2023 | 23,520.59 | | 2.69 | 115,854.31 | -4,676.29 | 7,388.89 | 0.00 |
| 10/29/24 | | 2.69 | FC Cost Service | 3/1/2023 | 23,520.59 | | 2.69 | 115,854.31 | -4,676.29 | 7,391.58 | 0.00 |

| Date | | | Description | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 10/29/24 | | 8.44 | FC Cost Service | 3/1/2023 | 23,520.59 | | | 8.44 | 115,854.31 | -4,676.29 | 7,400.02 | 0.00 |
| 10/29/24 | | 8.44 | FC Cost Service | | | | | 8.44 | 115,854.31 | -4,676.29 | 7,408.46 | 0.00 |
| 10/29/24 | | 8.44 | FC Cost Service | 3/1/2023 | 23,520.59 | | | 8.44 | 115,854.31 | -4,676.29 | 7,416.90 | 0.00 |
| 11/1/24 | 1,175.62 | | Contractual Payment Due | 3/1/2023 | 24,696.21 | | | | 115,854.31 | -4,676.29 | 7,416.90 | 0.00 |
| 11/7/24 | | 100.00 | FC Atty Fees | 3/1/2023 | 24,696.21 | | | 100.00 | 115,854.31 | -4,676.29 | 7,516.90 | 0.00 |
| 11/12/24 | | 0.69 | FC Cost Service | 3/1/2023 | 24,696.21 | | | 0.69 | 115,854.31 | -4,676.29 | 7,517.59 | 0.00 |
| 11/26/24 | | 30.00 | Property Inspection | 3/1/2023 | 24,696.21 | | | 30.00 | 115,854.31 | -4,676.29 | 7,547.59 | 0.00 |
| 12/1/24 | 1,175.62 | | Contractual Payment Due | 3/1/2023 | 25,871.83 | | | | 115,854.31 | -4,676.29 | 7,547.59 | 0.00 |
| 12/2/24 | | 525.00 | FC Atty Fees | 3/1/2023 | 25,871.83 | | | 525.00 | 115,854.31 | -4,676.29 | 8,072.59 | 0.00 |
| 12/3/24 | | 0.81 | FC Cost Service | 3/1/2023 | 25,871.83 | | | 0.81 | 115,854.31 | -4,676.29 | 8,073.40 | 0.00 |
| 1/1/25 | 1,175.62 | | Contractual Payment Due | 3/1/2023 | 27,047.45 | | | | 115,854.31 | -4,676.29 | 8,073.40 | 0.00 |
| 1/2/25 | | 30.00 | Property Inspection | 3/1/2023 | 27,047.45 | | | 30.00 | 115,854.31 | -4,676.29 | 8,103.40 | 0.00 |
| 1/6/25 | | 100.00 | FC Atty Fees | 3/1/2023 | 27,047.45 | | | 100.00 | 115,854.31 | -4,676.29 | 8,203.40 | 0.00 |
| 1/6/25 | | 0.69 | FC Cost Service | 3/1/2023 | 27,047.45 | | | 0.69 | 115,854.31 | -4,676.29 | 8,204.09 | 0.00 |
| 1/6/25 | | 8.44 | FC Cost Service | 3/1/2023 | 27,047.45 | | | 8.44 | 115,854.31 | -4,676.29 | 8,212.53 | 0.00 |
| 1/6/25 | | 8.44 | FC Cost Service | 3/1/2023 | 27,047.45 | | | 8.44 | 115,854.31 | -4,676.29 | 8,220.97 | 0.00 |
| 1/6/25 | | 8.44 | FC Cost Service | 3/1/2023 | 27,047.45 | | | 8.44 | 115,854.31 | -4,676.29 | 8,229.41 | 0.00 |

Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.


**M&T** Bank

P.O. Box 619063, Dallas, TX 75261-9063
DO NOT SEND MAIL TO THIS ADDRESS.

# Annual Escrow Account Disclosure Statement

**Page 1 of 4**
AMY BETH HOLDSWORTH

AMY BETH HOLDSWORTH
3553 BYRNE RD
PHILADELPHIA PA 19154-3314

**Please review – important information regarding your escrow account.**

**Loan Number:** ▮▮▮▮▮▮

**Property Address:**
3553 Byrne Rd
Philadelphia, PA 19154

**Statement Date:** 01/13/2025
**New Payment Effective Date:** 02/01/2025

Dear Amy Beth Holdsworth,

Your relationship is important to us and we appreciate the opportunity to service your home financing needs. This statement provides details on your escrow account history, as well as our projections for your property tax and homeowner's insurance obligations for the next 12 months.

Based on our review, there wasn't a shortage or surplus of funds in your escrow account. However, we need to adjust your account for future projected disbursements. **Your mortgage payment is changing — please see details below.**

## YOUR NEW PAYMENT

| Payment Information | Current Monthly Payment | Your New Monthly Payment beginning on 02/01/2025 |
|---|---|---|
| Principal & Interest: | $896.06 | $896.06 |
| Escrow Payment: | $279.56 | $322.29 |
| Escrow Shortage: | $0.91 | $0.00 |
| **Total Payment:** | **$1,176.53** | **$1,218.35** |

To help you better understand your statement, as well as escrow accounts in general, please review the enclosed "Helpful Information" page or visit mtb.com/escrow-faqs. If you have any other questions, please call us at 1-800-411-7627, Monday-Friday, 8:30am-9:00pm ET, or write to us at M&T Bank, P.O. Box 1288, Buffalo, NY 14240.

Thank you for being our customer. We take great pride in being your mortgage partner.

**Quick and easy payment options:**

 **ONLINE** at mtb.com

 **CALL** 1-800-411-7627

 **STOP BY** any M&T branch

INTERNET REPRINT

THIS SECTION HAS BEEN INTENTIONALLY LEFT BLANK

# M&T Bank

## YOUR ACCOUNT HISTORY

Below are the previous escrow projections (including anticipated escrow activity that may occur before your New Payment Effective Date listed on page 1) and the actual escrow activity to date. Comparing the two can determine where a difference may have occurred.

### Activity Summary

| Month & Year | Projected Payment to Escrow | Actual Payment to Escrow | Description | Projected Disbursement | Actual Disbursement | Projected Balance | Actual Balance |
|---|---|---|---|---|---|---|---|
| | | | Beginning Balance | | | $2,023.10 | $2,012.16 |
| Dec 2022 | $279.56 | * | | | | $2,302.66 | $2,012.16 |
| Jan 2023 | $279.56 | $280.47 * | | | | $2,582.22 | $2,292.63 |
| Feb 2023 | $279.56 | * | City/Village | $2,302.67 | $2,578.43 * | $559.11 | -$285.80 |
| Mar 2023 | $279.56 | * | | | | $838.67 | -$285.80 |
| Apr 2023 | $279.56 | $560.94 * | | | | $1,118.23 | $275.14 |
| May 2023 | $279.56 | * | | | | $1,397.79 | $275.14 |
| Jun 2023 | $279.56 | * | Hazard Ins | | $1,084.00 * | $1,677.35 | -$808.86 |
| Jul 2023 | $279.56 | * | Hazard Ins | $1,052.00 | * | $904.91 | -$808.86 |
| Aug 2023 | $279.56 | * | | | | $1,184.47 | -$808.86 |
| Sep 2023 | $279.56 | * | | | | $1,464.03 | -$808.86 |
| Oct 2023 | $279.56 | * | | | | $1,743.59 | -$808.86 |
| Nov 2023 | $279.56 | * | | | | $2,023.15 | -$808.86 |
| Feb 2024 | | | City/Village | | $2,578.43 * | $2,023.15 | -$3,387.29 |
| Jun 2024 | | | Hazard Ins | | $1,289.00 * | $2,023.15 | -$4,676.29 |
| Jan 2025 | | $6,438.07 * | | | | $2,023.15 | $1,761.78 |

**The total amount of escrow payments received during this period was $7,279.48
and the total escrow disbursements were $7,529.86.**

*Indicates a difference from a previous estimate either in the date or the amount of the deposit/disbursement.

M&T Bank is attempting to collect a debt and any information obtained will be used for that purpose. To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this statement is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, M&T Bank retains rights under its security instrument, including the right to foreclose its lien.

M&T Bank

**Annual Escrow Account
Disclosure Statement**

Page 3 of 4
AMY BETH HOLDSWORTH
Loan Number:
Statement Date: 01/13/25

## PROJECTED ESCROW PAYMENTS OVER THE NEXT 12 MONTHS

### Anticipated Annual Disbursements

| | |
|---|---|
| City Tax: | $2,578.43 |
| Hazard Ins: | $1,289.00 |
| Total: | $3,867.43 |

As allowed by federal law (RESPA), our projections include an escrow reserve (or cushion) equal to two monthly escrow payments (excluding MIP/PMI), unless state law specifies a lower amount.

### Projected Escrow Balance Summary

M&T Bank expects to pay $3,867.43 over the next 12 months.

Here's how to calculate your new monthly escrow payment:

| | |
|---|---|
| Total taxes and insurance: | $3,867.43 |
| Divided by 12 monthly payments: | $322.29 |
| **New Monthly Escrow Payment:** | **$322.29** |

### Anticipated Activity Summary

Projections for the coming year: The following summary shows anticipated activity in your escrow account for the next 12 months, which was used to calculate your payment above.

| Month & Year | Monthly Escrow Payment | Amount Scheduled to be Paid | Description | Projection Based on Current Balance | Projection Based on Required Balance |
|---|---|---|---|---|---|
| | | | Beginning Balance | $1,761.78 | $2,900.71 |
| **Feb 2025** | **$322.29** | **$2,578.43** | **City/Village** | **−$494.36** | **$644.57** |
| Mar 2025 | $322.29 | | | −$172.07 | $966.86 |
| Apr 2025 | $322.29 | | | $150.22 | $1,289.15 |
| May 2025 | $322.29 | | | $472.51 | $1,611.44 |
| Jun 2025 | $322.29 | | | $794.80 | $1,933.73 |
| Jul 2025 | $322.29 | $1,289.00 | Hazard Ins | −$171.91 | $967.02 |
| Aug 2025 | $322.29 | | | $150.38 | $1,289.31 |
| Sep 2025 | $322.29 | | | $472.67 | $1,611.60 |
| Oct 2025 | $322.29 | | | $794.96 | $1,933.89 |
| Nov 2025 | $322.29 | | | $1,117.25 | $2,256.18 |
| Dec 2025 | $322.29 | | | $1,439.54 | $2,578.47 |
| Jan 2026 | $322.29 | | | $1,761.83 | $2,900.76 |

**Escrow Requirements, New Mortgage Payment and Anticipated Annual Disbursements:**

| | |
|---|---|
| Projected Beginning Balance | $1,761.78 |
| - Required Minimum Balance | $2,900.71 |
| **Surplus/Shortage** | **$0.00**\*\* |

Your lowest monthly escrow balance for the next 12 months should reach $644.57, which equals a reserve of two months' escrow payments. The expected amount in your escrow account after your Jan 2025 payment is $1,761.78. Your starting balance according to this review should be $2,900.71. This means that your have neither a shortage or surplus.

\*\*This has been adjusted for the bankruptcy proof of claim.

REPRESENTATION OF PRINTED DOCUMENT

**M&T** Bank

**Annual Escrow Account
Disclosure Statement**

Borrower Paid Mortgage Insurance Premium: Your mortgage loan requires a borrower paid mortgage insurance premium ("MIP"). MIP is insurance from the Federal Housing Administration ("FHA") that protects lenders against loss in the event a borrower defaults on a mortgage.

**Effective for all loans closed on or after January 1, 2001, FHA annual MIP will be automatically cancelled under the following conditions:**
**Loans with FHA case numbers assigned before June 3, 2013:**

- Mortgage loan terms greater than 15 years: the annual MIP will be cancelled when the loan to value ratio reaches 78%, provided the mortgagor has paid the annual mortgage insurance premium for at least five years.

- Mortgage loan terms less than or equal to 15 years with a loan to value ratio greater than 78%: the annual MIP will be cancelled when the loan to value ratio reaches 78%.

**FHA will determine when you have reached the 78% loan to value ratio based on the lower of the sales price or appraised value at origination.** New appraised values will not be considered. Cancellation of the annual mortgage insurance premium will normally be based on the scheduled amortization of the loan. However, in cases where additional payments have been applied to the loan balance as a prepayment, cancellation can be based on the actual amortization of the loan. If you have prepaid and believe you have met the requirements for cancelling the FHA insurance, please send a written request to us at P.O. Box 1288, Buffalo, NY 14240.

**Loans with FHA case numbers assigned on or after June 3, 2013:**

- Mortgage loan terms greater than 15 years with loan to value ratio greater than 90%: duration of the annual MIP is the loan term.
- Mortgage loan terms greater than 15 years with loan to value ratio less than or equal to 90%: duration of the annual MIP is 11 years.
- Mortgage loan terms less than or equal to 15 years with loan to value ratio greater than 90%: duration of the annual MIP is the loan term.
- Mortgage loan terms less than or equal to 15 years with loan to value ratio less than or equal to 90%: duration of the annual MIP is 11 years.

Equal Housing Lender. ©2022 M&T Bank. Member FDIC. NMLS                              **mtb.com**

# Helpful information about your mortgage escrow disclosure statement.

To help you better understand your statement, as well as escrow accounts in general, answers to some of the most frequently asked questions are listed below.

**Q Why am I getting this statement?**

**A** Mortgage lenders are required by regulations to perform an annual review of your account and provide a hard copy statement for your records.

**Q How does an escrow account work?**

**A** A mortgage escrow account allows you to pay ongoing property tax and homeowner's insurance costs within your monthly mortgage payments. These additional funds accumulate in your escrow account, managed by M&T, and we pay property taxes, homeowner's insurance and any mortgage insurance on your behalf when they are due.

**Q How is my escrow payment determined?**

**A** To determine the appropriate funds are collected for the escrow portion of your payment, we use the following calculation:

*12 months of anticipated escrow payments, accounting for any existing escrow balance*

**+** *escrow reserve*

**÷** *12*

**=** *monthly escrow payment*

The escrow reserve (or escrow cushion) is the amount of money collected to cover any unanticipated increases in your real estate tax or insurance premium payment. It acts as a buffer and helps to prevent your escrow account from being overdrawn. An escrow reserve exists on your account unless your mortgage documents or state law applies and is generally a two-month escrow payment.

**Q What causes escrow payments to change from year to year?**

**A** Your escrow payment may increase for several reasons. The most common reasons are:

• Increases in your property taxes, insurance premiums, or your property's tax assessment

• Changes in your insurance carrier or your tax due date

• Fewer deposits to escrow than expected

Even though taxes or insurance may go down from the previous year, it doesn't mean escrow payments will also decrease. Analysis calculations for tax and/or insurance are based on last amount(s) paid, or where applicable, from the prior servicer or from closing documents. If you have received more recently updated information from your tax assessor, please forward it to eta@mtb.com.

**TIP:** Municipalities offer a few common tax exemptions for disability, homestead, senior and veteran status. Check with your local tax office to see if you are eligible for these, or any other exemptions.

**Q If there is an escrow shortage, what do I need to do?**

**A** You are not required to pay the escrow shortage in full.

If you do not want to submit the full shortage amount, the escrow shortage will be spread equally over 12 months of payments and your new payment will be higher for the coming year.

If you choose to submit the full shortage amount (partial payments are not permitted), you have two payment options:

• **Online:** Log in to your M&T Online or Mobile Banking account, select your mortgage account and click the "View My Mortgage Info" button. At the top left of the next screen, select "Make A Payment." Your mortgage loan must be current to use this option.

• **By Mail:** Send a check, made payable to M&T Bank with "escrow shortage payment" and the loan number noted on the memo line, to: M&T Bank, Escrow Department, P.O. Box 64787, Baltimore, MD 21264-4787. If you are paying your escrow shortage, the funds will be applied immediately, however your mortgage statement may not reflect changes until the analysis effective date.

**PLEASE NOTE:** Paying the full shortage amount will adjust your account resulting in the smallest possible increase in your monthly mortgage payment amount. It's important to keep in mind that any increase in your real estate tax amounts and/or insurance premium(s) may cause your payment amount to change even if you pay your shortage amount.

**Q Why do I have an escrow overage (surplus of funds) in my account?**

**A** An overage occurs if the current funds and future payments to your escrow account are estimated to exceed the anticipated tax and insurance payments for the next 12 months (escrow analysis period). An overage may occur if taxes or insurance premiums were lower than estimated. When the escrow analysis is completed, the overage amount may be sent to you as a refund check. If the surplus is less than $50, it will be credited to your payment.

## Have additional questions? We're here to help.

Go to **mtb.com/escrow-faqs** for answers to other frequently asked questions.
Or call us at **1-800-411-7627** Monday – Friday, 8:30am – 9pm ET.

We appreciate your business. Thank you for giving us the opportunity to serve your financial needs.



⌂ Equal Housing Lender. ©2022 M&T Bank. Member FDIC. NMLS                    **mtb.com**

Prepared by: SHALIA CREDELL

# ORIGINAL

**Multistate**

# NOTE

FHA Case No.

LOAN #: ▮▮▮▮▮▮

JUNE 09, 2009
[Date]

3553 BYRNE RD, PHILADELPHIA, PA 19154
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means BANK OF AMERICA, N.A.
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED SIXTY SIX THOUSAND NINE HUNDRED TWENTY and 00/100

Dollars (U.S. $166,920.00     ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FIVE               percent (    5.000 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a Mortgage, Deed of Trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on AUGUST 01, 2009     . Any principal and interest remaining on the first day of JULY, 2039     , will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at
P.O. Box 660694, Dallas, TX 75266-0694
or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $896.06        . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge    ☐ Growing Equity Allonge    ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR            percent (    4.000 %) of the overdue amount of each payment .

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of

CASE #: [ ]                                                                LOAN #: [ ]

payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

   (C)  **Payment of Costs and Expenses**

     If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.    WAIVERS

    Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.    GIVING OF NOTICES

    Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

    Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

*ORIGINAL*

_Amy Beth Gormley_ _____ (Seal)
AMY BETH GORMLEY                                         -Borrower

_____ (Seal)
                                                          -Borrower

**PAY TO THE ORDER OF**
**LAKEVIEW LOAN SERVICING LLC**
**WITHOUT RECOURSE**
**BANK OF AMERICA, N.A.**

BY _Michele Sjolander_
**MICHELE SJOLANDER**
**SENIOR VICE PRESIDENT**

**Pay To The Order Of** _____ (Seal)
                                                          -Borrower

**WITHOUT RECOURSE**
**LAKEVIEW LOAN SERVICING LLC** _____ (Seal)
                                                          -Borrower
**BY:** _____
**Julio Aldecocea, Vice President**

_____ (Seal)
                                                          -Borrower

Prepared by: SHALIA CREDELL                    **BANK OF AMERICA, N.A.**

DATE:        06/08/2009
BORROWER: AMY BETH GORMLEY          **ORIGINAL**          Office #: ██████
CASE NO:     ██████                                       525 LINCOLN DR W,  STE 405
LOAN NO:     ██████                                       MARLTON, NJ 08053
PROPERTY:    3553 BYRNE RD                                Phone:
             PHILADELPHIA, PA 19154                       Office Fax No.: ██

# NAME AND SIGNATURE AFFIDAVIT

BEFORE ME, the undersigned Notary Public, on this day personally appeared the person who signed this Affidavit, and who, after being duly sworn by me, did on his or her oath state the following:

My legal name is:                              My legal signature is:

AMY BETH GORMLEY                               _Amy Beth Gormley_
(Print or Type Name)                           Signature (exactly as I signed the Security Instrument)

I am also known as:

_____
(Print or Type Name)

_____
(Print or Type Name)

_____
(Print or Type Name)

_____
(Print or Type Name)

State/Commonwealth of ___PA___
County/Parish of ___BUCKS___

Subscribe and sworn to (or affirmed) before me on this ___9th___ day of ___JUNE___, 20 ___09___, by
___Amy Beth Gormley___, proved to me on the basis of
satisfactory evidence to be the person(s) who appeared before me.

Signature ___Jennifer L Rapp___

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JENNIFER L. RAPP, Notary Public
Lower Southampton Twp., Bucks County
My Commission Expires September 10, 2010

Name & Signature Affidavit
1304--US (11/08).01(d/i)                        Page 1 of 1

eRecorded in Philadelphia PA   Doc Id: 52077881
08/16/2009 03:18PM        Receipt#:
Page 1 of 12              Rec Fee: $126.50
Commissioner of Records  Doc Code: M
State RTT:    Local RTT:

Prepared By:
SHALIA CREDELL
BANK OF AMERICA, N.A.


525 LINCOLN DR W, STE 405
MARLTON
NJ 08053


After Recording Return To:
BANK OF AMERICA, N.A.



CA6-914-01-42 DOC PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Parcel Number:

Premises:
3553 BYRNE RD
PHILADELPHIA
PA 19154


————————— [Space Above This Line For Recording Data] —————————

[Case #]                                              [Doc ID #]

**Commonwealth of Pennsylvania**    **MORTGAGE**    FHA Case No.

                                    MIN

·THIS MORTGAGE ("Security Instrument") is given on   JUNE 09, 2009

**FHA Pennsylvania Mortgage with MERS - 4/96**
MERS FHA Mortgage-PA
1004N-PA (05/08)(d/i)                    Page 1 of 10              Amended 6/02



MUTUAL ABSTRACT COMPANY
421 Bustleton Pike   21155
Feasterville, PA  19053
215-355-6300

CASE #: ███████████         DOC ID #: ███████████

The Mortgagor is
AMY BETH GORMLEY

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee.
MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O.
Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
BANK OF AMERICA, N.A.

("Lender") is organized and existing under the laws of THE UNITED STATES          , and has an
address of
101 South Tryon Street, Charlotte, NC 28255

Borrower owes Lender the principal sum of
ONE HUNDRED SIXTY SIX THOUSAND NINE HUNDRED TWENTY and 00/100

Dollars (U.S. $ 166,920.00      ·     ). This debt is evidenced by Borrower's note dated the same date as
this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier,
due and payable on  JULY 01, 2039          . This Security Instrument secures to Lender: (a) the
repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the
Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely
as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the
following described property located in  PHILADELPHIA
County, Pennsylvania:

CASE #: ███████████        DOC ID #: ███████████

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which has the address of

3553 BYRNE RD, PHILADELPHIA

[Street, City]

Pennsylvania    19154    ("Property Address");
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1.    **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.    **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the

CASE #: ██████████████    DOC ID #: ██████████████

Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

   3.   **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

   First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

   Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

   Third, to interest due under the Note;

   Fourth, to amortization of the principal of the Note; and

   Fifth, to late charges due under the Note.

   4.   **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

   In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application

CASE #: ▮▮▮▮▮▮▮▮▮▮▮▮        DOC ID #: ▮▮▮▮▮▮▮▮▮▮▮▮

of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5.    Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6.    Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7.    Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

CASE #: ███████████████        DOC ID #: ███████████████

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.    **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.    **Grounds for Acceleration of Debt.**

(a)    **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)    Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)    Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b)    **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)    All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)    The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c)    **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d)    **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)    **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

CASE #: ███████████████        DOC ID #: ███████████████

**10.   Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11.   Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.   Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.   Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14.   Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15.   Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16.   Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall

CASE #: ███████████          DOC ID #: ███████████

not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate.to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** To the extent permitted by applicable law, Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding and invoke any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

CASE #: ████████████        DOC ID #: ████████████

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**21. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**22. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**23. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider
☐ Planned Unit Development Rider    ☐ Graduated Payment Rider
☒ Other [specify]  SEE LEGAL ARTTACHED

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
AMY BETH GORMLEY                                 - Borrower

_____ (Seal)
                                                 - Borrower

_____ (Seal)
                                                 - Borrower

_____ (Seal)
                                                 - Borrower

CASE #: ███████████        DOC ID #: ███████████

**COMMONWEALTH OF PENNSYLVANIA,**                    *BUCKS*          . **County ss:**

On this, **9th** day of **June, 2009**_____, before me, the undersigned officer,
personally appeared _____ **Amy Beth Gormley** _____

_____

_____ known to me (or satisfactorily proven) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed
the same for the purposes herein contained.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires:

```
COMMONWEALTH OF PENNSYLVANIA
          NOTARIAL SEAL
   JENNIFER L. RAPP, Notary Public
 Lower Southampton Twp., Bucks County
My Commission Expires September 10, 2010
```

*Jennifer L. Rapp*

*Title Clerk*
Title of Officer

**Certificate of Residence**
    I, _____ *Jennifer L Rapp* _____, do hereby certify that the correct address of
the within-named Mortgagee is 3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474 or P.O. Box 2026, Flint,
MI 48501-2026.
    Witness my hand this _____ **9th** _____ day of _____ **June** _____, **2009** .

*Jennifer L. Rapp*
Agent of Mortgagee

MERS FHA Mortgage-PA
1004N-PA (06/08)                    Page 10 of 10

CASE #: ███████████

DOC ID #: ██████████████

# LEGAL DESCRIPTION EXHIBIT A

Legal Description Exhibit A
1C404-XX (08/08)(d/i)

Page 1 of 1





LAND AND PREMISES SITUATE IN THE CITY AND COUNTY OF PHILADELPHIA AND STATE OF PENNSYLVANIA.

BEGINNING AT A POINT IN THE NORTHERLY CURVED LINE OF BYRNE ROAD, DISTANT TWO HUNDRED SEVENTY NINE FEET, ELEVEN AND ONE FOURTH INCHES WESTWARDLY MEASURED ALONG THE TANGENT AND CURVED NORTHERLY LINE OF BYRNE ROAD FROM THE INTERSECTION OF THE NORTHERLY LINE OF BRYNE ROAD WITH THE EASTERLY LINE OF KESWICK ROAD, SAID BEGINNING POINT BEING IN THE EXTENDED MIDDLE LINE OF PARTY WALL BETWEEN PREMISES 3553 AND 3555 BYRNE ROAD; THENCE WESTWARDLY ALONG THE NORTHERLY CURVED LINE OF BYRNE ROAD, CURVING TO THE RIGHT WITH A RADIUS OF TWO THOUSAND FOUR FEET, ONE AND THREE EIGHTHS INCHES, AN ARC DISTANCE OF TWENTY FEET, NO INCHES TO A POINT IN THE EXTENDED MIDDLELINE OF PARTY WALL BETWEEN PREMISES 3551 AND 3553 BYRNE ROAD; THENCE NORTH TWO DEGREES, ELEVEN MINUTES, TWENTY SIX SECONDS EAST ALONG THE MIDDLE LINE OF SAID LAST MENTIONED PARTY WALL AND IT'S EXTENSIONS NINETY FEET, FIVE EIGHTHS INCHES TO A POINT IN THE NORTHERLY BOUNDARY LINE OF PLAN HEREINAFTER MENTIONED; THENCE EASTWARDLY ALONG SAID BOUNDARY LINE, CURVING TO THE LEFT WITH A RADIUS OF ONE THOUSAND, NINE HUNDRED FOURTEEN FEET, ONE AND THREE EIGHTHS INCHES, AN ARC DISTANCE OF TWENTY FEET, NO INCHES TO A POINT IN THE EXTENDED MIDDLE LINE OF PARTY WALL BETWEEN PREMISES 3553 AND 3555 BYRNE ROAD, AFOREMENTIONED; THENCE SOUTH TWO DEGREES, ELEVEN MINUTES, TWENTY SIX SECONDS WEST ALONG THE MIDDLE LINE OF SAID LAST MENTIONED PARTY WALL AND ITS EXTENSIONS NINETY FEET, ONE AND ONE EIGHTH INCHES TO THE PLACE OF BEGINNING.

BEING KNOWN AS PREMISES 3553 BYRNE ROAD, AS SHOWN ON SURVEY AND PLAN OF PROPERTY MADE FOR KORMAN DEVELOPMENT CO, INC. 58TH WARD, PHILADELPHIA, MADE BY JOHN J. MCDEVITT, SURVEYOR AND REGULATOR, 4TH DISTRICT, DATED OCTOBER 22, 1965.

Form No. 1056.06
ALTA Loan Policy (6-17-06)

*(As Modified by TIRBOP)*



Nº ███████ **PAL**

# LOAN POLICY OF TITLE INSURANCE

### ISSUED BY
### *First American Title Insurance Company*

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at the address shown in Section 17 of the Conditions.

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation (the "Company") insures as of Date of Policy and, to the extent stated in Covered Risks 11, 13, and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
   (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
   (ii) failure of any person or Entity to have authorized a transfer or conveyance;
   (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
   (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
   (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
   (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
   (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage
   (a) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
   (b) failure of any person or Entity to have authorized a transfer or conveyance;
   (c) the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
   (d) failure to perform those acts necessary to create a document by electronic means authorized by law;
   (e) a document executed under a falsified, expired, or otherwise invalid power of attorney;

(f) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
(g) a defective judicial or administrative proceeding.
10. The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.
11. The lack of priority of the lien of the Insured Mortgage upon the Title
    (a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is either
    (i) contracted for or commenced on or before Date of Policy; or
    (ii) contracted for, commenced, or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on Date of Policy to advance; and
    (b) over the lien of any assessments for street improvements under construction or completed at Date of Policy.
12. The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.
13. The invalidity, unenforceability, lack of priority, or avoidance of the lien of the Insured Mortgage upon the Title
    (a) resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction creating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
    (b) because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
    (i) to be timely, or
    (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
14. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this policy, but only to the extent provided in the Conditions.

*First American Title Insurance Company*

BY *[signature]* PRESIDENT

ATTEST *[signature]* SECRETARY

BY *[signature]*
COUNTER SIGNED

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

## CONDITIONS

### 1. DEFINITION OF TERMS

The following terms when used in this policy mean:
   (a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b) or decreased by Section 10 of these Conditions.
   (b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.
   (c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.
   (d) "Indebtedness": The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the Indebtedness is the sum of
   (i) the amount of the principal disbursed as of Date of Policy;
   (ii) the amount of the principal disbursed subsequent to Date of Policy;
   (iii) the construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the advance;
   (iv) interest on the loan;
   (v) the prepayment premiums, exit fees, and other similar fees or penalties allowed by law;
   (vi) the expenses of foreclosure and any other costs of enforcement;
   (vii) the amounts advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of the estate or interest in the Title;

(viii) the amounts to pay taxes and insurance; and
   (ix) the reasonable amounts expended to prevent deterioration of improvements;
   but the Indebtedness is reduced by the total of all payments and by any amount forgiven by an Insured.
   (e) "Insured": The Insured named in Schedule A.
   (i) The term "Insured" also includes
      (A) the owner of the Indebtedness and each successor in ownership of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions;
      (B) the person or Entity who has "control" of the "transferable record," if the Indebtedness is evidenced by a "transferable record," as these terms are defined by applicable electronic transactions law;
      (C) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
      (D) successors to an Insured by its conversion to another kind of Entity;
      (E) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
         (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
         (2) if the grantee wholly owns the named Insured, or
         (3) if the grantee is wholly-owned by an affiliated Entity or the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity;
      (F) any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not;
   (ii) With regard to (A), (B), (C), (D), and (E) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance, or other matter insured against by this policy.
   (f) "Insured Claimant": An Insured claiming loss or damage.
   (g) "Insured Mortgage": The Mortgage described in paragraph 4 of Schedule A.
   (h) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.
   (i) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.
   (j) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.
   (k) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.
   (l) "Title": The estate or interest described in Schedule A.
   (m) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

### 2. CONTINUATION OF INSURANCE

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

(d) ... under (a), (b), and (c), and the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

## 9. LIMITATION OF LIABILITY

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, or establishes the lien of the Insured Mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

(a) All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.

(b) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

## 11. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 12. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) The Company's Right to Recover

Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Insured's Rights and Limitations

(i) The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.

(ii) If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.

(c) The Company's Rights Against Noninsured Obligors

The Company's right of subrogation includes the Insured's rights against non-insured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond, and the obligor will not be an Insured under this policy.

## 13. ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

## 15. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

## 16. CHOICE OF LAW; FORUM

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

## 17. NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at 1 First American Way, Santa Ana, CA 92707, Attn: Claims Department.

# *POLICY OF TITLE INSURANCE*

### 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title or the lien of the Insured Mortgage, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

### 4. PROOF OF LOSS

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

### 5. DEFENSE AND PROSECUTION OF ACTIONS

(a)  Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b)  The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c)  Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

### 6. DUTY OF INSURED CLAIMANT TO COOPERATE

(a)  In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b)  The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage.

All information designated as confidential by ... provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

### 7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a)  To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i)  To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

(ii)  To purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay.

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b)  To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i)  to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii)  to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

### 8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a)  The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

(i)  the Amount of Insurance,

(ii)  the Indebtedness,

(iii)  the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

(iv)  if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b)  If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,

(i)  the Amount of Insurance shall be increased by 10%, and

(ii)  the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c)  In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.

Receipt#: ███████
Records Department    Doc Code: ███

When Recorded Return To:
Jillian Keitz
M&T Bank
PO BOX 1596
Buffalo, NY  14240

## CORPORATE ASSIGNMENT OF MORTGAGE

Philadelphia, Pennsylvania
M&T Bank#: █████████ "GORMLEY" Q08

MIN █████████ SIS #: █████████

Date of Assignment: March 16th, 2023

Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR BANK OF AMERICA, N.A., ITS SUCCESSORS AND ASSIGNS

Assignee: LAKEVIEW LOAN SERVICING, LLC

I hereby certify the precise address of the within named Assignee is 4425 PONCE DE LEON BLVD, CORAL GABLES, FL  33146.

MERS has a physical address at 11819 Miami St., Suite 100, Omaha, NE 68164 and a mailing address at PO BOX 2026, FLINT, MI 48501-2026

Executed By: AMY BETH GORMLEY  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR BANK OF AMERICA, N.A., ITS SUCCESSORS AND ASSIGNS
Dated: 06-09-2009 Recorded: 06-16-2009 as Instrument/Document 52077881, Book/Reel/Liber N/A Page/Folio N/A  In the County of Philadelphia, State of Pennsylvania.

Property Address: 3553 BYRNE RD, PHILADELPHIA, PA  19154 in the City of PHILADELPHIA

Legal:See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

I do certify that the precise address of LAKEVIEW LOAN SERVICING, LLC is 4425 PONCE DE LEON BLVD, CORAL GABLES, FL  33146
Attested By: _____

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $166,920.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 3

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR BANK OF AMERICA, N.A., ITS SUCCESSORS AND ASSIGNS

On March 16th, 2023

By:_____
Daniel Jaques, Assistant Secretary

STATE OF New York
COUNTY OF Erie

On the 16th day of March in the year 2023 before me, the undersigned, personally appeared Daniel Jaques, Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR BANK OF AMERICA, N.A., ITS SUCCESSORS AND ASSIGNS , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

WITNESS my hand and official seal,

Tammy M. Hamilton
Notary Public State of New York
Notary Expires: 1/12/2025  #01HA6199021
Qualified in Erie County

**TAMMY M HAMILTON
NOTARY PUBLIC STATE OF NEW YORK
ERIE COUNTY
LIC. #01HA6199021
COMM. EXP. 01/12/2025**

CORPORATE ASSIGNMENT OF MORTGAGE Page 3 of 3

## Exhibit A

LAND AND PREMISES SITUATE IN THE CITY AND COUNTY OF PHILADELPHIA AND STATE OF PENNSYLVANIA.

BEGINNING AT A POINT IN THE NORTHERLY CURVED LINE OF BYRNE ROAD, DISTANT TWO HUNDRED SEVENTY NINE FEET, ELEVEN AND ONE FOURTH INCHES WESTWARDLY MEASURED ALONG THE TANGENT AND CURVED NORTHERLY LINE OF BYRNE ROAD FROM THE INTERSECTION OF THE NORTHERLY LINE OF BRYNE ROAD WITH THE EASTERLY LINE OF KESWICK ROAD, SAID BEGINNING POINT BEING IN THE EXTENDED MIDDLE LINE OF PARTY WALL BETWEEN PREMISES 3553 AND 3555 BYRNE ROAD; THENCE WESTWARDLY ALONG THE NORTHERLY CURVED LINE OF BYRNE ROAD, CURVING TO THE RIGHT WITH A RADIUS OF TWO THOUSAND FOUR FEET, ONE AND THREE EIGHTHS INCHES, AN ARC DISTANCE OF TWENTY FEET, NO INCHES TO A POINT IN THE EXTENDED MIDDLELINE OF PARTY WALL BETWEEN PREMISES 3551 AND 3553 BYRNE ROAD; THENCE NORTH TWO DEGREES, ELEVEN MINUTES, TWENTY SIX SECONDS EAST ALONG THE MIDDLE LINE OF SAID LAST MENTIONED PARTY WALL AND IT'S EXTENSIONS NINETY FEET, FIVE EIGHTHS INCHES TO A POINT IN THE NORTHERLY BOUNDARY LINE OF PLAN HEREINAFTER MENTIONED; THENCE EASTWARDLY ALONG SAID BOUNDARY LINE, CURVING TO THE LEFT WITH A RADIUS OF ONE THOUSAND, NINE HUNDRED FOURTEEN FEET, ONE AND THREE EIGHTHS INCHES, AN ARC DISTANCE OF TWENTY FEET, NO INCHES TO A POINT IN THE EXTENDED MIDDLE LINE OF PARTY WALL BETWEEN PREMISES 3553 AND 3555 BYRNE ROAD, AFOREMENTIONED; THENCE SOUTH TWO DEGREES, ELEVEN MINUTES, TWENTY SIX SECONDS WEST ALONG THE MIDDLE LINE OF SAID LAST MENTIONED PARTY WALL AND ITS EXTENSIONS NINETY FEET, ONE AND ONE EIGHTH INCHES TO THE PLACE OF BEGINNING.

BEING KNOWN AS PREMISES 3553 BYRNE ROAD, AS SHOWN ON SURVEY AND PLAN OF PROPERTY MADE FOR KORMAN DEVELOPMENT CO, INC. 58TH WARD, PHILADELPHIA, MADE BY JOHN J. MCDEVITT, SURVEYOR AND REGULATOR, 4TH DISTRICT, DATED OCTOBER 22, 1965.